## EMMA L. MAGILL ET AL.

### v.

## THE DE WITT COUNTY NATIONAL BANK.

*Chattel Mortgages—Assignment—Sale under Execution—Injunction—Equitable Assignment of Mortgage—Subrogation.*

1. Where mortgaged property has been sold under execution and the proceeds paid over to the judgment creditor and such creditor has been required to pay the amount secured by the mortgage into court for the benefit of the mortgagee, in proceedings under a bill to restrain the mortgagee from interfering with the sale, the court may equitably assign and transfer the mortgage to the complainant with the same effect as if made by the mortgagee.

2. In the case presented, as the complainant had been required to pay a judgment for the proceeds of the sale in favor of the vendee of the mortgagor, it was proper to require her to pay to the complainant the amount secured by the mortgage.

[Opinion filed November 18, 1884.]

APPEAL from the Circuit Court of DeWitt County; the Hon. G. W. HERDMAN, Judge, presiding.

Messrs. MOORE & WARNER, for appellants.

While the DeWitt County National Bank might pay the debt due John Warner, in the supposed interest of its junior lien on the mules, it had no right to demand or have, under any circumstances, the note and chattel mortgage held by him. Flachs v. Kelly, 30 Ill. 462, 472; Handly v. Munsell, 109 Ill. 362; Ellsworth v. Lockwood, 42 N. Y. 89; Butler v. Taylor, 5 Gray, 455; Lamson v. Drake, 105 Mass. 564; Lamb v. Montague, 112 Mass. 352; Jones on Mortgages, Sec. 792.

And the alleged offer to pay the John Warner debt, being coupled with the condition that he surrender and deliver to the appellee the note and mortgage held by him, was not good as a tender, and appellee acquired no rights under it. A tender to be good must be made without condition. Pulsiver v. Shepherd, 36 Ill. 513, 517; Holton v. Brown, 18 Vt. 224; Thayer v. Brackett, 12 Mass. 450; Wood v. Hitchcock, 20 Wend. 47; Sanford v. Buckley, 30 Conn. 344; Roosevalt v. Bank, 45 Barb. 579.

Mrs. Magill might lawfully receive the mules in satisfaction, or part satisfaction, of her debt, though the debtor was insolvent at the time, and other equally meritorious creditors were thereby prevented from collecting any part of the amounts due them. Gray v. St. John, 35 Ill. 222; Butters v. Haughwout et al., 42 Ill. 18; Wells v. Miller, 37 Ill. 276; Hessing v. McCloskey, 37 Ill. 341; Waterman v. Donalson, 43 Ill. 29; C., B. & Q. R. R. Co. v. Watson et al., 113 Ill. 195; Foster v. Magil, *supra*.

An intermeddler, stranger or volunteer can not pay the secured debt of a third person and then be subrogated to the rights of the creditor in the securities. Suppiger v. Garrels et al., 20 Ill. App. 625; Bayard v. McGraw, 1 Ill. App. 141; Falls v. City of Cairo, 58 Ill. 403; Bishop v. O'Conner, 69 Ill. 431; Lewis v. City Bank, 72 Ill. 543; Beaver v. Slanker, 94

Ill. 175; Acer v. Hotchkiss, 97 N. Y. 393; Sanford v. McLean, 3 Paige Ch. 117; 7 Wait's Actions and Defenses, 402 to 405.

Messrs. GEORGE B. GRAHM, R. A. LEMON and JAMES EWING, for appellee.

Appellee had a right to have the note and chattel mortgage to John Warner turned over to the court, on payment of the note; and the court had the right to compel Mrs. Magill to return the money thus paid by appellee.

A junior incumbrancer or lienor of personal or real property has a right to pay the prior lien for the protection of his own, and be subrogated to all of the legal and equitable rights of the prior incumbrancer. Armstrong v. McAlpine, 18 Ohio, St. 184; Jones on Chattel Mortgages, Sec. 658 and 659; Sheldon on Subrogations, Sec. 12, 15, 21 and 77; Muir v. Berkshire, 52 Ind. 149.

And a party thus subrogated has both the right of property and possession, and can maintain trover against subsequent lienors. Mosier's Appeal, 56 Penn. St. R. 76; Lewis v. Palmer, 28 N. Y. 271.

It seems to us very clear from the foregoing, and the authorities therein cited, that appellee was entitled to the possession of the note and mortgage on the mules held by Warner, and therefore had a right to attach the condition to the tender, that said Warner deliver up to appellee the securities held by him. A very full discussion of the principle herein involved may be found in the cases of Blunt v. Tomlin, 27 Ill. 93, and Clark v. Weis, 87 Ill. 438.

The leading case cited by appellant, Hanley v. Munsell, 109 Ill. 362, is a case in point for appellee. The demurrer to the cross-bill was sustained because the complainant therein, the subsequent purchaser, failed to bring into court the money he claimed to have tendered in order to discharge the prior incumbrance, and the court say: "Had complainant brought the money into court in compliance with the original bill, and asked no release except as to his co-defendants, it might be the court would have kept the mortgage and indebtedness thereby alive for him until he could have litigated the matters in contention between himself and his co-defendants."

CONGER, P. J.   The essential facts necessary to an under. standing of this case are as follows:

On the 7th of September, 1883, James De Land and Thomas Snell were the owners of eighty-eight head of mules. On that day De Land, desirous of raising money upon his interest in the mules, procured his son-in-law, Wilbert H. Wheeler, and his daughter, Emma L. Magill, appellant, to execute a note to John Warner for $2,700, which sum was borrowed from Warner and used by De Land. A chattel mortgage was also executed and delivered to Warner at the same time to secure the note of Wheeler and Magill.

Soon after this the mules were divided between De Land and Snell, each taking forty-four as his individual share, and on November 30, 1883, De Land executed to his daughter, Mrs. Magill, a bill of sale for the mules, conveying them to her, subject, however, to the chattel mortgage previously executed to Warner. The mules were then taken by Wheeler as agent of Mrs. Magill to Macon County to be fed and cared for.

On the 6th day of December, 1883, appellee, in the DeWitt. Circuit Court, recovered a judgment against De Land and others for $4,765.80, upon which judgment an execution was issued directed to the Sheriff of Macon County, who was appellant Foster, with directions to him to levy upon the De Land mules. Foster refusing to do so without indemnity, appellee gave him the necessary indemnifying bond, and the levy was made on January 17, 1884, and the mules were afterward sold under the execution for $3,878, which sum, after the expenses were deducted, was paid over by the Sheriff to appellee upon its judgment.

On January 28, 1884, Mrs. Magill, claiming to be owner of such mules, brought her action of replevin in the Circuit Court of Macon County against Foster for their recovery, and on May 17th filed a declaration in trover in said suit, and on June 24, 1884, recovered a judgment against Foster in her action of trover for $3,955.50, which judgment was afterward affirmed both in the Appellate and Supreme Courts.

On the 7th day of February, 1887, an execution issued upon this judgment against Foster, and he at once paid the full

amount thereof, *i. e.*, $4,575.92 to Mrs. Magill, and afterward, in the DeWitt County Circuit Court, brought suit against appellee upon the bond of indemnity previously given him, but before this suit was tried appellee paid to Foster $4,724.29, being the amount paid by Foster to Mrs. Magill, with all interest and costs.

The original bill in this case was filed January 25, 1884, for the purpose of enjoining John Warner from interfering, by virtue of his chattel mortgage, with the possession of the mules while in the hands of Sheriff Foster.

It would seem no good purpose to follow the history of the various amendatory bills and cross-bills by which the foregoing facts together with all parties in interest were brought before the courts.

During the pendency of these chancery proceedings, and on August 29, 1884, John Warner entered his motion for an order upon appellee to deposit with the clerk of the court the $2,700 before that time tendered by appellee to Warner in payment of his chattel mortgage, which motion was allowed by the court. The appellee paid the money into court, and Warner deposited the note and chattel mortgage with the clerk of the court, and on September 2d, on motion of Warner, the money was paid to him, the court retaining the possession and control of the note and chattel mortgage, until the final hearing of the case, to be dealt with as justice and equity may require.

Upon a final hearing the court found:

" That at December term, 1883, appellee recovered a judgment against Thomas Snell, James T. Snell and James De Land for the sum of $4,765.80.

" That on January 16, 1884, execution issued on the judgment directed to Foster, then Sheriff of Macon County, to execute, and he levied it upon forty-four mules as the property of De Land.

" That on September 7, 1883, Wheeler and Magill made to John Warner their note for $2,700, with eight per cent. interest after due, due eight months after its date; and Wheeler

and De Land made to Warner a mortgage on said forty-four mules to secure the same.

" That the note and mortgage were given for money borrowed for De Land, and to secure Magill and Wheeler for signing the note, and the mules were turned over to Wheeler to be held and sold by him for the purpose of paying the note.

" That on January 25, 1884, appellee tendered John Warner $2,700, being the full amount then due on said note, which sum he refused to accept, and proceeded to take possession of the mules by virtue of his mortgage, but was restrained from doing so by this court.

" That on November 30, 1883, De Land sold the mules to Emma L. Magill, subject to the mortgage, which she assumed, and agreed to pay as part of the purchase price of the mules.

" That on the 28th day of January, 1884, Mrs. Magill commenced a replevin suit in the Circuit Court of Macon County against Foster (Sheriff), to recover possession of the mules, and filed her declaration in trover, the Sheriff having previously sold the mules under the execution for $3,878, and paid the sum, less costs of sale and expenses, including keeping the mules ($349.95), to complainant; that she obtained a judgment against Foster for $3,955.56, being the full value of the mules.    That on the date of the judgment, June 26, 1884, Foster prosecuted an appeal to the Appellate Court, and then took it to the Supreme Court by writ of error, and in both courts the judgment of the Circuit Court was affirmed.

" That on motion of John Warner, the owner of the note and mortgage, this $2,700, which the appellee offered in exchange for said note and mortgage, was brought into open court and deposited with the clerk, and thereupon John Warner brought the note and mortgage into open court and deposited the same with the clerk as a condition precedent required by the court to the payment to him of the money so deposited, and moved the court to order the money to be paid over to him, which the court did, and he received and receipted for the same.    Appellee then moved the court that the note and mortgage be delivered to it, which the court

Magill v. DeWitt Co. Nat. Bank.

denied, but retained the same in its custody until the final hearing hereof, to be dealt with as justice and equity requires.

"And the court finds, inasmuch as John Warner freely deposited the note and mortgage with the court, without restriction or conditions, upon consideration of the money being turned over to him, and the court having retained the same and heard the cause, that the complainant be subrogated to all the rights and privileges of John Warner in and to said mortgage so far as said mortgage lien on said property is concerned, and, as to that, complainant stand in his place and stead, the same as if he had retained the same, and that the mortgage on the mules and the proceeds thereof be held to still subsist .and exist on the proceeds of the same in the hands of Emma L. Magill.

"That on February 7, 1887, execution issued on the Macon County judgment in favor of Emma L. Magill for the sum of $4,644.97, which amount with $37.18 additional costs, making in all $4,682.15, was paid the Sheriff of Macon County by Foster, and by the Sheriff paid over to Emma L. Magill, less the costs, and the Sheriff's additional costs, the actual amount received by Emma L. Magill being $4,575.92, which was in full satisfaction of the judgment and interest.

"That complainant has paid to Foster $4,724.29, being the amount paid by Foster with interest, together with costs which have accrued in favor of Foster against complainant and others in this court.

"That Emma L. Magill has received from the complainant $2,700 more than she is entitled to, and that she is liable to complainant for that sum, with interest thereon at the rate of six per cent. from August 29, 1884. It is therefore ordered, adjudged and decreed by the court that Emma L. Magill pay complainant within thirty days, $3,120.75, with interest at six per cent. thereon from the date of this decree, and that upon the payment thereof the note and chattel mortgage be canceled and delivered to her, and that in default of her making said payment execution issue."

We see no valid objection to this decree. It rests upon the

basis that Warner having deposited the note and chattel mortgage in court, through the agency of the court, appellee was compelled to pay to him the value of such note and mortgage. Under the circumstances the court would have the right, as in fact it did, to equitably assign and transfer the mortgage to appellee with like effect as though in fact made by Warner. The order of the court requiring appellee to pay in the money for Warner's use and then transferring it to him could be justified only upon the theory that thereby an equitable transfer of the mortgage was made to appellee.

Appellee was under no legal or equitable obligations to pay Warner, and unless it was to receive the benefit of the mortgage, the order of the court requiring it to pay in the money would have been unjust and unwarranted.

While it may be true that appellee was not in condition to be subrogated to Warner's rights as a volunteer and upon its own motion, yet when compelled to pay Warner, upon Warner's motion, the court had the right to make such use of the mortgage as equity might require.

Should this decree be reversed, the order requiring appellee to pay the money to Warner would also have to be reversed; Warner would have to repay the money to appellee; Mrs. Magill would have to pay off the mortgage to Warner, and the result would be the same as is reached by the decree of the court below.

Numerous other questions have been raised and discussed, but we think none of them affect the substantial merits of the case, and for that reason they are not noticed. Believing that substantial justice has been done, the decree of the Circuit Court will be affirmed.

*Decree affirmed.*